# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>JOPE LOLOMA LEWENILOVO and SUSANA BOSENAVUNIWAI LEWENILOVO,<br><br>      Debtors. | Case No. 11-02709<br>Chapter 7 |
| DAVID FURUTO and SHARLENE FURUTO,<br><br>      Plaintiffs,<br><br>  vs.<br><br>JOPE LOLOMA LEWENILOVO and SUSANA BOSENAVUNIWAI LEWENILOVO,<br><br>      Defendants. | Adv. Pro. No. 12-90002<br><br><br><br><br>Re: Docket No. 1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

      The trial of this adversary proceeding was held on August 27 and September 6, 2012. Gary P. Quiming represented the plaintiffs and Kendal Luke represented the defendants. Based on the evidence, I make the following

# FINDINGS OF FACT

1. Plaintiffs David and Sharlene Furuto own the property located at 54-181 Kawaeku Street, Hauula, Hawaii. The property is improved with a house that includes several dwelling units.

2. Mr. and Mrs. Furuto, as landlord, and defendants Jope Loloma Lewenilovo and Susana Bosenavuniwai Lewenilovo, as tenant, entered into a Rental Agreement, dated February 25, 2002, under which Mr. and Mrs. Lewenilovo agreed to rent one of the dwelling units in the property for $1,200 per month. The rental agreement recites that the rent was about 25% less than the market rate in consideration of the Lewenilovo's agreement to "do all repairs, improvements, and maintenance on the Tenant's own time, materials, labor, and related costs, such as plumbing, painting, electrical, carpentry, etc."

3. Shortly thereafter, the parties orally modified the rental agreement to include all of the dwelling units on the property and to increase the rent accordingly.

4. When the Lewenilovos took possession of the property, it was in good condition for its age.

5. In 2006, the Furutos became concerned that the Lewenilovos were not properly maintaining the property. They began the process of evicting the

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 2 of 14

Lewenilovos. The Lewenilovos requested an opportunity to stay in the property, and the Furutos agreed on the condition that the Lewenilovos complete numerous specified repairs by specified dates. The agreement is set forth in a second Rental Agreement, dated June 17, 2006.

6. Under the 2006 Rental Agreement, the Lewenilovos are responsible for all utilities, including pumping the cesspool into which wastewater is discharged.

7. In 2009, the Furutos received two letters from the State of Hawaii Department of Health, warning that wastewater was being illegally discharged on the property. In response, Mr. Lewenilovo stated that he had fixed the problem and that "the tenant will guarantee the regular pumping of the cesspool to also avoid any overflow."

8. The Lewenilovos breached the 2006 Rental Agreement by failing to make the agreed upon repairs, failing to maintain the property, and failing to pay rent.

9. On October 14, 2010, the Furutos brought an action against the Lewenilovos in state court for summary possession of the property. The Lewenilovos vacated the property in November 2010.

10. The Lewenilovos left the property in deplorable condition. For

3

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 3 of 14

example:

  a. Mr. Lewenilovo cut the drain pipes which directed wastewater, including sewage, from the house to the cesspool, and replaced them with pipes that dumped the wastewater onto the surface of the property and a neighbor's property.

  b. The flow of wastewater undermined and damaged a concrete masonry wall separating the property from a neighbor's property.

  c. In an attempt to create a wheelchair accessible shower, Mr. Levenilovo removed a conventional shower stall in one of the bathrooms. He tiled the floor where the shower stall had been, but he did not create a sill around the shower and or sufficient slope to direct the shower water to the floor drain. As a result, shower water flowed out of the bathroom and into adjoining rooms, ruining carpets, flooring, the bottoms of drywall and doors, and sill plates inside the walls.

  d. Cracks in the bottom of another shower stall allowed water to infiltrate the floor and walls, damaging drywall, baseboards, and sill plates.

  e. Construction materials and trash were dumped on a neighbor's property. The Lewenilovos claimed that some of the refuse was there when they moved into the property but admitted that Mr. Lewenilovo had dumped some of the materials.

4

    f. Redwood louvers on some windows were broken or missing. Mr. Lewenilovo attempted to repair some of them but his work was incompent.

    g. Floor tiles, drywall, doors, plumbing fixtures, electrical outlets and switches, and cabinetry were badly damaged in many locations.

  11. At least in some instances, the nature and extent of the damage supports an inference that the damage was deliberately caused, and that the person causing the damage must have known and intended that his or her acts would harm the Furutos' property. Included in this category are the deliberate cutting of the drain pipes and the redirection of the sewage and wastewater onto the surface of the property and a neighbor's property, and the creation of the "wheelchair accessible" shower with no adequate means of draining the shower water.

  12. In other instances, the facts do not support such an inference. For example, the damage to the redwood louvers was likely caused by ordinary deterioration in Hawaii's humid climate. Although the attempted repairs were ineffective and incompetent, it is not clear that the Lewenilovos intended to damage the Furutos' property. Likewise, mere negligence or carelessness probably caused some of the damages to the interior of the property, such as holes in drywall caused by doorknobs, cracked and lifting floor tiles, and children's scribbles on walls.

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed  09/25/12   Page 5 of 14

13. Mr. Lewenilovo carried out all of the attempted repairs and modifications of the property, including the cut drain lines and the shower modification. He knew that his actions would harm the Furuto's property. Mrs. Lewenilovo did not do any of that work. She did not intend to inflict harm on the Furutos.

14. The Furutos incurred the following damages as a direct and foreseeable consequence of Mr. Lewenilovo's conduct:

    a. The Furutos paid a contractor $122,610.29 to repair the property. The record does not establish how much of this amount is attributable to the damages which Mr. Lewenilovo deliberately caused. The construction contract does not itemize the price and some of the work is not attributable to the willful and malicious damages. For example, the contract specifies that the contractor is to replace almost all of the windows in the house with new vinyl windows; there is no evidence that the Lewenilovos willfully and maliciously damaged all of those windows.

    b. Second, the Furutos paid an architect $1,800 to make the drawings for the repairs and obtain the necessary permits, and they paid a permit fee of $742.00 to the City and County of Honolulu. The Furutos would have incurred the same charges even if none of the damages to the property was

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 6 of 14

attributable to mere carelessness or breach of contract.

   c. Third, the Furutos will have to pay $24,205.00 to replace the concrete masonry wall which the diverted wastewater undermined.  The Furutos have not completed this repair because they cannot afford it.  This amount is attributable to Mr. Lewenilovo's willful and malicious conduct.

   d. Fourth, because of the damages to the property, the Furutos have been unable to rent it to another tenant and have lost $64,000 of rental income.  The willful and malicious injury to the property was so substantial that the Furutos would have suffered the same loss even if none of the damage was the result of mere carelessness or breach of contract.

 15. On February 25, 2011, the state court entered a money judgment in favor of the Furutos and against the Lewenilovos for $130,204.00.

 16. On October 12, 2011, the Lewenilovos filed a petition for relief under chapter 7 of the Bankruptcy Code.

Based on the foregoing findings of fact, I draw the following

## CONCLUSIONS OF LAW

 1. The court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. § 1334 (2006).  This is a core proceeding in bankruptcy. Id. § 157(b)(2)(I).  The bankruptcy court has the authority to enter a final

7

judgment. Venue is proper.

2. The Furutos contend that their claims against the Lewenilovos are not dischargeable under 11 U.S.C. § 523(a)(6) (2006). That subsection provides that the chapter 7 discharge "does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

3. Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Meyer v. Rigdon, 36 F.3d 1375, 1385 (7th Cir. 1994).

4. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; see also In re Niles, 106 F.3d 1456, 1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

5. In order to establish "willful and malicious injury" under § 523(a)(6), the Furutos have the burden of proving both "willful" and "malicious" injury. The

8

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 8 of 14

malicious injury requirement is separate from the willful injury requirement. Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).

6.  "A 'willful' injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Id. (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Injury caused by recklessness or negligence does not constitute "willful injury." Geiger, 523 U.S. at 60. The injury itself must be "deliberate or intentional." Id. "[Section] 523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." Carillo v. Su (In re Su), 290 F.2d 1140, 1144 (9th Cir. 2002), citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202 (9th Cir.), cert. denied, 533 U.S. 930 (2001).

7.  Circumstantial evidence can support a finding of "willfulness" under section 523(a)(6). The court can infer the requisite intention from the nature, extent, and circumstances of the injury. Nahman v. Jacks (In re Jacks), 266 B.R. 728, 742 (B.A.P. 9th Cir. 2001) ("[S]ubjective intent may be gleaned from objective factors.").

8.  The subjective intent and subjective belief which section 523(a)(6) requires cannot be imputed from one party to another. The plaintiff must prove that each debtor had the requisite state of mind. Detroit Forming, Inc., v. Wolf (In

9

re Wolf), 331 B.R. 256, 262-63 (E.D. Mich. 2005); First Tennessee Bank v. Hansen (In re Hansen), 473 B.R. 240, 257-58 (Bankr. E.D. Tenn. 2012); H. Park Partners v. Frick (In re Frick), 427 B.R. 627, 635 (Bankr. N.D. Ohio 2010).

9. Mr. Lewenilovo willfully injured the property of Mr. and Mrs. Furuto. Mr. Lewenlilovo knew that some of his "repairs" and modifications of the property, such as his redirection of wastewater onto the surface of the property and a neighbor's property, would injure, or were substantially certain to injure, the Furuto's property.

10. The Furutos did not prove, however, that all of the damage to the property was the product of Mr. Lewenilovo's willful conduct. Some of the damage was apparently caused by carelessness.

11. Mrs. Lewenilovo did not willfully injure the property of Mr. and Mrs. Furuto. She did not make or participate in any of the improper "repairs" and modifications. At most, she failed to stop her husband from making those alterations. Her failure to act does not constitute "willful" conduct within the meaning of section 523(a)(6). See Hansen, 473 B.R. at 256.

12. A "malicious act" is (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Albarran, 545 F.3d at 706. "Malice may be inferred from the nature of the

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 10 of 14

wrongful act" if it is first established that the act was willful. Ormsby, 591 F.3d at 1207.

13. Some of Mr. Lewenlilovo's conduct was "malicious" under this definition. The redirection of the wastewater and the alteration of the shower, among other acts, were wrongful. Mr. Lewenilovo made those modifications intentionally. Those modifications necessarily caused injury to the Furutos' property. The only "cause or excuse" provided by Mr. Lewenilovo is that he "did the best he could do." This is insufficient. For example, he could have solved the wastewater problem by having the cesspool pumped more frequently. This would have cost a few hundred dollars a month. His desire to save a relatively small amount of money is not a "just cause or excuse" for his decision to dump raw sewage on the surface of the Furutos' land and the neighbor's land. Further, he could have created a "wheelchair accessible" shower that drained properly and did not spread the shower water into adjoining rooms.

14. None of Mrs. Lewenilovo's conduct was "malicious" within the meaning of the statute. She did not make or participate in any of the modifications which damaged the Furutos' property.

15. The Lewenilovos correctly point out that an "intentional breach of contract cannot give rise to non-dischargeability under 11 U.S.C. § 523(a)(6)

11

unless it is accompanied by conduct that constitutes a tort under state law." Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. 2008). Waste, however, is a tort under Hawaii law. J.D. Paris v. Vasconcellos, 14 Haw. 590, 594, 1903 WL 1155, at *3 (Hawai'i Terr. 1903). Hawaii's Landlord-Tenant Code allows a landlord to bring an action for waste for damage suffered by the tenant's wilful or negligent failure to keep the property in fit condition. See Haw. Rev. Stat. §§ 521-69(c), -51(7) (West 2012). See also Mirner v. First Republic Bank (In re Mirner), 2011 WL 3300102, at *1 (B.A.P. 9th Cir. May 24, 2011) (applying California law).

16. The essential elements of waste include: (1) an injury; (2) to property; (3) by one rightfully in possession, but who does not have full title to the property; (4) to the prejudice or detriment of the owner of the property. Vasconcellos, 1903 WL 1155, at *3; see also Waller v. Heckman (In re Heckman), 2011 WL 5148975, at *2 (Bankr. D. Or. October 28, 2011) (defining waste under Oregon law). Mr. and Mrs. Lewenilovo resided on the property, but the property was owned by the Furutos. Mr. Lewenilovo's willful conduct caused injury to the property to the detriment of the Furutos.

17. Section 523(a)(6) excepts from discharge only those injuries, and the resulting damages, which arise from willful and malicious conduct. The Furutos have the burden of proving the extent to which their claim arises from willful and

12

malicious conduct, rather then simple negligence or a breach of contract. In re Heckman, 2011 WL 5148975, at *3-4.

18. The Furutos's alleged damages fall into four categories.

    a. First, the Furutos paid a contractor $122,610.29 to repair the property. The record does not establish how much of the price is attributable to the willful and malicious damages, rather than simple carelessness or breach of contract. The Furutos have not carried their burden of proof as to this amount.

    b. Second, the Furutos paid $2,542 in architectural and permitting fees. The Furutos would have incurred the same expense even if none of the damages to the property was attributable to mere carelessness or breach of contract. Accordingly, this amount is not dischargeable.

    c. Third, the expense of $24,205.00, to replace the concrete masonry wall which the diverted wastewater undermined, is attributable to Mr. Lewenilovo's willful and malicious conduct, and therefore this amount is not dischargeable.

    d. Fourth, the Furutos have lost $64,000 of rental income. The willful and malicious injury to the property was so substantial that the Furutos would have suffered the same loss even if none of the damage was the result of mere carelessness or breach of contract. Accordingly, this amount is not

U.S. Bankruptcy Court - Hawaii    #12-90002    Dkt # 31    Filed  09/25/12    Page 13 of 14

dischargeable.

## JUDGMENT

Based on these findings of fact and conclusions of law, a separate judgment will enter holding that the Furuto's claim against Mr. Lewenlilovo in the amount of $90,747.00 is not dischargeable in bankruptcy, and that all of the Furuto's claims against Mrs. Lewenilovo and all of their other claims against Mr. Lewenilovo are dischargeable in bankruptcy.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 09/25/2012

14

U.S. Bankruptcy Court - Hawaii   #12-90002   Dkt # 31   Filed 09/25/12   Page 14 of 14